IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES JOHNSON, | ) | Case No. 3:19-cv-0710 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| ED SHELDON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Charles Johnson, an Ohio prison inmate serving an eighteen-year to life, mandatory aggregate sentence after a jury found him guilty of murder with a firearm specification, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2254, contending that the state courts violated his constitutional rights in *State v. Johnson*, No. G-4801-CR-0201601322-000¸ Lucas County Court of Common Pleas.  ECF Doc. 1.  Johnson is currently incarcerated[1] at the Mansfield Correctional Institution, in Mansfield, Ohio where Ed Sheldon is warden and maintains custody of Johnson.[2]  Warden Sheldon opposed the petition in his answer and return of writ.  ECF Doc. 7.  Johnson has filed a traverse in support (ECF Doc. 10) and Warden Sheldon has filed a reply.  ECF Doc. 11.  The matter is before me by an

---

[1] Offender search result as of July 7, 2020.
[2] Mansfield Correctional Institution staff as of July 7, 2020.

automatic order of reference under Local Rule 72.2 for preparation of a report &
recommendation pursuant to Local Rule 72.1.

Because Johnson's claims are procedurally defaulted and/or lacking in merit, I
recommend that his claims be DISMISSED and his petition for writ of habeas corpus be
DENIED.

## II.      State Court History

### A.      Trial Court

On February 19, 2016 a Lucas County, Ohio grand jury returned an indictment
charging Johnson with one count of aggravated murder in violation of Ohio Rev. Code §
2903.01(A) and (F), with a firearm specification, and one count of murder in violation of Ohio
Rev. Code § 2903.02(B) and Ohio Rev. Code § 2929.02, with a fire specification.  Johnson
pleaded not guilty.  ECF Doc. 7-1 at 6.

On May 23, 2016, Johnson moved to suppress the statements he made to police while
in custody.  ECF Doc. 7-1 at 7.  The trial court held a suppression hearing on May 23, 2016
and denied Johnson's motion to suppress in a June 2, 2016 judgment entry.  ECF Doc. 7-1 at
12.

The case proceeded to trial and the jury returned a verdict of not guilty on the
aggravated murder charge, but guilty of the murder charge and the firearm specification.  ECF
Doc. 7-1 at 16.  The trial court sentenced Johnson to the mandatory fifteen-year to life prison
term for murder and a mandatory three-year prison term for the firearm specification.  The
sentences were statutorily required to be served consecutively.  ECF Doc. 7-1 at 16.

**B.    Direct Appeal**

Johnson appealed his convictions to the Ohio Court of Appeals.  ECF Doc. 7-1 at 20.

*State v. Johnson,* 6th Dist. No. CL 16-1165, 2017-Ohio-8206.  Through new counsel, Johnson

filed a merits brief on February 17, 2017 in which he asserted two assignments of error:

> 1. The trial court erred in denying defendant's motion to suppress his statement as he was under the influence.
>
> 2. The trial court erred in ordering defendant to pay costs and reimburse the state.

ECF Doc. 7-1 at 32.  The state filed an appellee brief.  ECF Doc. 7-1 at 47.  On October 13,

2017, the Ohio Court of Appeals rejected Johnson's assignments of error and affirmed the

trial court's judgment.  *State v. Johnson,* 6th Dist. No. CL 16-1165, 2017-Ohio-8206; ECF

Doc. 7-1 at 63.

On November 15, 2017, Johnson filed a timely *pro se* notice of appeal and

memorandum in support of jurisdiction with the Ohio Supreme Court.  ECF Doc. 7-1 at 77,

80.  Johnson's jurisdictional memorandum asserted two propositions of law which were

identical to his court of appeals assignments of error.  ECF Doc. 7-1 at 86.  The state did not

file a response.  ECF Doc. 7-1 at 110.  On March 14, 2018, the Supreme Court of Ohio

declined to accept jurisdiction of Johnson's case.  ECF Doc. 7-1 at 111; *State v. Johnson,* 152

Ohio St.3d 1425, 2018-Ohio-923, 93 N.E.3d 1005.

Johnson did not petition the United States Supreme Court for a writ of certiorari and

his filing deadline expired on June 12, 2018.  USCS Supreme Ct. R. 13.

**C.    Delayed App. R. 26(B) Application to Reopen Appeal**

On January 30, 2018, Johnson filed an untimely *pro se* application to reopen his direct

appeal pursuant to Ohio App. R. 26(B) alleging ineffective assistance of appellate counsel.

ECF Doc. 7-1 at 112.  Johnson argued that his appellate counsel failed to challenge his waiver of *Miranda* rights as argued in his motion to suppress.  ECF Doc. 7-1 at 113.  He also argued that appellate counsel's assistance was ineffective because he failed to raise the following issues on appeal:

1.  appellant's conviction of murder was against the manifest weight of the evidence;

2.  insufficiency of evidence;

3.  involuntary manslaughter (was not raised as a lesser included offense of murder in violation of due process of law); and

4.  prosecutorial misconduct.

ECF Doc. 7-1 at 115.  The state filed a memorandum in opposition.  ECF Doc. 7-1 at 118.  On March 7, 2018, the Ohio Court of Appeals denied Johnson's application because it was untimely and because Johnson had not shown good cause to excuse its untimeliness pursuant to Ohio App. R. 26(B)(1).

Johnson did not appeal that decision to the Ohio Supreme Court and his deadline for appealing expired on Monday, April 23, 2018.  Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i); Ohio S. Ct. Prac. R. 3.03(A)(1).

### III.  Federal Habeas Corpus Petition

On April 1, 2019, Johnson, through counsel, filed a timely[3] petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court.[4]  Johnson has asserted the following grounds for relief:

**GROUND ONE:** The trial court erred in denying defendant's motion to suppress his statements.

---

[3] The warden asserts (ECF Doc. 7 at 8) and I concur that the petition was filed within the one-year limitations period of 28 U.S.C. 2244(d).

4

**Supporting Facts:**  Mr. Johnson was intoxicated and under the influence of pain medication (provided by medical personnel as a result of a gun shot wound) when he waived his Miranda rights and made statements to law enforcement.  As such, the waiver was not made intelligently, knowingly, or voluntarily.  ECF Doc. 1 at 6.

**GROUND TWO:** Petitioner did not receive effective assistance of appellate counsel as guaranteed by the 6th Amendment to the United States Constitution.

**Supporting Facts:**  Appellate counsel failed to raise the issues of whether Mr. Johnson's waiver of his right to counsel and right to remain silent was made knowingly and intelligently.  The Court of Appeals' decision acknowledges such.  Instead, appellate counsel raised only the issue of whether the waiver was made voluntarily.  Given the underlying evidence and argument regarding Mr. Johnson's condition at the time of the alleged waiver, the appropriate, relevant, and effective issues to raise with respect to that waiver were whether they were knowing and intelligent.  That is, did Mr. Johnson have a full understanding of the nature of the rights he was forfeiting and the consequences of abandoning those rights.  ECF Doc. 1 at 8.

Warden Sheldon opposes Johnson's claims and urges the court to dismiss the claims and deny the petition. ECF Doc. 7.  Johnson has filed a traverse in which he withdrew his Ground One claim.  ECF Doc. 10.  Warden Sheldon has filed a reply.  ECF Doc. 11.

## IV.    Facts

We begin with a recitation of the factual findings of the Ohio Courts.  The Ohio Court of Appeals summarized the relevant facts as follows:

{¶ 2}   Around 1:45 a.m. on February 12, 2016, Johnson shot and killed Darnell Mitchell at the Classic Lounge in Toledo.  An off-duty Toledo police officer who was providing security at the bar heard gunshots and saw Johnson holding a gun, prompting the officer to shoot and disable Johnson.  The bullet struck Johnson in the back of his left shoulder and caused a superficial wound.  He was arrested and taken by ambulance to the Toledo Hospital for treatment.

{¶ 3}   Johnson arrived at the hospital around 2:00 a.m.  His blood alcohol level was tested when he arrived and is recorded in Johnson's medical records as .27 percent.  The medical records indicate that Johnson was combative upon arrival and received sedating medications.  The records also show that Johnson received a prescription for a narcotic painkiller upon his discharge.  The hospital discharged Johnson to the custody of the Toledo Police Department ("TPD") at 2:19 p.m.  TPD officers took him to the police department for

5

questioning.  Sergeant Kevin Korsog and Sergeant Tim Campbell interviewed Johnson beginning at 3:10 p.m.  The interview lasted approximately one hour (including periods where Johnson sat in the room by himself for several minutes).  Officers took Johnson into custody at the end of the interview.

{¶ 4}   On February 19, 2016, the grand jury indicted Johnson on one count of aggravated murder in violation of R.C. 2903.01(A) and one count of murder in violation of R.C. 2903.02(B).  Both counts included gun specifications.  On May 23, 2016, Johnson filed a motion seeking to suppress his statements to the police because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On May 31, 2016, the trial court held a suppression hearing.  The state presented Sergeant Korsog's testimony and admitted the recording of the interview into evidence.  Johnson did not present any evidence.

{¶ 5}   Sergeant Korsog testified that he was involved in the investigation of Mitchell's murder.  He and Sergeant Campbell interviewed Johnson as part of the investigation.  The interview took place approximately 13 hours after Johnson was shot and almost an hour after he was discharged from the hospital. Although Johnson arrived at the police station in a hospital gown, the transport officers reported that Johnson did not display any unusual behavior while on the way to the police station.

{¶ 6}   Sergeant Korsog testified that before he interviews a suspect, victim, or witness, his normal practice is to first assess whether the interviewee is capable of speaking to him in a "clear, conscious, and knowledgeable way."  He generally does not interview someone who is actively being treated at the hospital, but indicated that a suspect's discharge from the hospital is a significant sign that the suspect is capable of giving an interview.  Sergeant Korsog stated that, in this case, he believed that Johnson was lucid and capable of speaking with him based on the transport officers' report and his own observation of Johnson's demeanor.

{¶ 7}   Sergeant Korsog began the interview by reading Johnson his *Miranda* rights from a printed form.  Johnson did not sign a form acknowledging his rights, but Sergeant Korsog testified that Johnson verbally acknowledged that he understood each right.  Although the microphones in the interview room did not pick up the sound, the video confirms that Johnson nodded "yes" when Sergeant Korsog asked him if he understood each separate right.  After reviewing Johnson's rights with him, Sergeant Korsog determined that Johnson was lucid and proceeded with his questioning.  Sergeant Korsog monitored Johnson's lucidity throughout the interview and never became concerned that Johnson lacked understanding of the situation or was incapable of providing information.  Johnson engaged in conversation with Sergeant Korsog and his partner, and asked and answered questions related to the investigation.

6

{¶ 8}   On cross, Sergeant Korsog admitted that he knew that the hospital had given Johnson some type of pain medication, but knew nothing else about the medication.  Based on his observations, he did not believe any drugs were interfering with Johnson's mental capacity.  He also testified that although other officers told him that Johnson had smelled of alcoholic beverages at the scene, Johnson did not smell of alcoholic beverages during the interview.  Sergeant Korsog knew that the hospital conducted a blood alcohol screening, but he was not aware of the results of the test until defense counsel mentioned them at the hearing.  Sergeant Korsog stated that he took both Johnson's earlier intoxication and the length of time between the shooting and the interview into account, and he still believed that Johnson understood the situation and that alcohol was not a factor.  Sergeant Korsog did admit, however, that people under the influence of alcohol or drugs can appear lucid and answer questions.  He further admitted that he did not know Johnson prior to the interview, so he did not know if Johnson's demeanor and behavior at the time of the interview were normal.

{¶ 9}   The video of the interview shows Johnson speaking clearly, engaging in normal conversation, asking relevant questions, and answering the officers' questions.  He appears calm, alert, and focused on the task at hand.  During the interview, the officers ask Johnson if he is all right, immediately get him water when he asks for it, offer him something to eat, and bring him food.  Beyond Johnson's hospital garb, the video shows two indications that his injuries might have been affecting him.  The first is his inability to sign a form consenting to a DNA swab because of an injury to his hand.  Johnson also loses his balance when he stands up from his chair; this happens near the end of the video while the officers are out of the room.  He does not have any balance issues when he stands to allow officers to put him in handcuffs.  Johnson does not tell the officers that he is tired or act tired during the interview, although he does lay his head on the table several times while the officers are out of the room.  At no point does Johnson ask to stop the interview, ask for an attorney, request medical attention, tell the officers that he is in pain, or show physical signs of being in severe pain.

*State v. Johnson,* 6th Dist. No. CL 16-1165, 2017-Ohio-8206.  These state court factual

findings are presumed correct unless Johnson rebuts them by clear and convincing evidence.

28 U.S.C. § 2254(e)(1);  *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

V.      **Law and Analysis**

A.      **Procedural Default**

Warden Sheldon argues that Johnson's claims were procedurally defaulted and should be dismissed on that basis.  "Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court."  *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court."  *Id.* (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted)); 28 U.S.C. § 2254(b)(1)(A).  The petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court."  *Gerth*, 938 F.3d at 827.  A federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

8

Johnson has withdrawn his Ground One claim.  ECF Doc. 10 at 1.  His Ground Two claim was not raised in his direct appeal, but he raised an ineffective appellate counsel claim in his delayed App. R. 26(B) application to reopen appeal.  However, the Ohio Court of Appeals denied his application because he failed to comply with App. R. 26(B)(1).  In so doing, the Ohio Court of Appeals enforced its procedural rule, which was an adequate and independent ground for denying relief.  *Hoffner v. Bradshaw,* 622 F.3d 487, 504 (6th Cir. 2010); *Parker v. Bagley,* 543 F.3d 859, 861 (6th Cir. 2008);  *Fautenberry v. Mitchell,* 515 F.3d 614, 641 (6th Cir. 2008); *Monzo v. Edwards,* 281 F.3d 568, 577 (6th Cir. 2002).  And because Johnson did not appeal the Ohio Court of Appeals' denial of his 26(B) application to the Ohio Supreme Court, he did not exhaust his state court remedies on this claim.  Thus, Johnson procedurally defaulted his Ground Two claim in multiple ways and it should be dismissed unless he can show that his default may be excused such that this court should consider the merits of his claim.

## B.        Grounds to Excuse Procedural Default

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) something external to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton,* 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell,* 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady,* 456 U.S. 152, 170-72 (1982).

Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 1.      Cause and Prejudice

Johnson has not offered any explanation, much less any "cause external to the defense," for his failure to file a timely R. 26(B) application to reopen appeal. The initial habeas forms he submitted requested an explanation for any failure to exhaust state remedies. Johnson responded, "Petitioner attempted to raise this claim in an application for re-opening that was denied by the state court of appeals." ECF Doc. 1 at 8. However, Johnson did not explain why he filed a late application or why he did not appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court. Consequently, he offered no explanation as to why he didn't exhaust his state court remedies.

Johnson's traverse admits that his application to re-open was untimely but, rather than simply stating the reasons he failed to file a timely application, Johnson requests an evidentiary hearing or that he be permitted to supplement the record in this matter to establish the facts and circumstances why the application was filed late. ECF Doc. 10 at 2. Johnson also states that it is "not clear from the record … whether Mr. Johnson's appellate counsel timely notified him of the decision from the court of appeals and the 90-day window to file his

10

application to re-open based on a claim of ineffective assistance of appellate counsel." ECF Doc. 10 at 2.  This second argument lacks merit.  Johnson did not have counsel when he filed his application to re-open.  ECF Doc. 7-1 at 112-115.  Nor was he entitled to counsel at this phase of his case.  *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Ross v. Moffit,* 417 U.S. 600 (1974); *Wainwright v. Torna,* 455 U.S. 586 (1982)(when there is no constitutional right to counsel there can be no deprivation of effective counsel).  And, his own ignorance of the law does not excuse procedural default.  *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's ignorance of the law and procedural requirements is not enough to constitute cause to excuse procedural default in habeas corpus petition under 28 U.S.C. § 2254).

As to Johnson's request for an evidentiary hearing or leave to supplement the record, I agree with Warden Sheldon that the court should neither hold an evidentiary hearing nor permit Johnson to expand the record.  28 U.S.C. § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
>> (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Johnson has not argued that he tried to develop these facts in state court or was prevented from doing so.  And this same law also applies to his request to expand the record without an

evidentiary hearing. *Holland v. Jackson,* 542 U.S. 649, 653 (2004), citing *Cargle v. Mullen,* 317 F.3d 1196, 1209 (10th Cir. 2003). The court should not grant an evidentiary hearing or permit Jackson to expand the record in this matter, particularly when he could have provided an explanation for his failure to exhaust his claim when he first petitioned the court for habeas relief.

Moreover, as argued by the warden, even if Jackson could show cause for failing to file a timely App. R. 26(B) application, he would still be required to explain why he failed to appeal the denial of the application to the Ohio Supreme Court. He was not entitled to an attorney after his initial appeal and, because he filed a *pro se* application to reopen his appeal, no attorney was obligated to inform him of the Ohio Court of Appeals' denial of his application. Thus, even if the Court permitted Johnson to expand the record, his second procedural default (failing to appeal to the Ohio Supreme Court) would still preclude consideration of his Ground Two claim. Johnson has not established cause sufficient to excuse the procedural default of his claims. Because Johnson has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir. 2000). However, as is further explained below, Johnson's Ground Two claim also lacks merit, so he would not be able to show prejudice from a dismissal based on procedural default.

## 2. Actual Innocence

A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual

innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).  For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court.  *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003).  This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008).  New evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward,* 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases.  *Carter,* 443 F.3d at 538.

Johnson does not argue that he was actually innocent.  His Ground Two claim relates to whether appellate counsel should have argued that he did not knowingly and intelligently waive his Miranda rights.  ECF Doc. 1 at 8.  Because Johnson's Ground Two claim is procedurally defaulted and because he has neither demonstrated cause and prejudice to excuse the default nor argued his actual innocence, I recommend that his Ground Two claim be dismissed as procedurally defaulted.

C.    **Merits Review**

Even though Johnson's Ground Two claim was procedurally defaulted, it can readily be seen that his Ground Two claim also lacks merit.  Thus, in order to be of greatest service to the Court, I have included the following analysis.

### 1.    Parties' Arguments

On Johnson's Ground Two claim, Warden Sheldon argues that Johnson did not receive ineffective assistance of appellate counsel because Jackson's argument - that his waiver of his right to counsel and his right to remain silent were not knowingly and intelligently made – lacks merit.  And if lacking merit, his appellate counsel's failure to raise the argument could not constitute ineffective assistance of counsel.  ECF Doc. 7 at 29.

Johnson's traverse implies that he procedurally defaulted his Ground Two claim due to ineffective assistance of counsel.  He states,

> Only after the record in this matter is supplemented can this Court determine whether Mr. Johnson's seemingly apparent procedural default can be excused based on ineffective assistance of counsel.  It is worth noting that it is the ineffective assistance of appellate counsel upon which he bases his second ground for relief.  And, sadly, likely resulted in a potential procedural default.

ECF Doc. 10 at 2-3.  But Johnson's Ground Two claim was procedurally defaulted when he failed to file a timely App. R. 26(B) application to reopen his appeal, and he was not entitled to counsel for that filing.  *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L.Ed.2d 539 (1987);  *Tolliver v. Sheets,* 594 F.3d 900, 929 (6th Cir. 2010) ("Under Ohio law, however, a Rule 26(B) proceeding is a "separate collateral" proceeding rather than part of the original appeal. * * * Tolliver therefore has no constitutional right to counsel for the proceeding -- and thus certainly had no constitutional right to effective counsel.")  Indeed, Johnson filed his own Rule 26(B) application to reopen his direct appeal.  Thus, it is difficult to understand how appellate counsel's alleged ineffectiveness could possibly have caused the procedural default of Johnson's Ground Two claim.

2.      **AEDPA Standards for Merits Review**

AEDPA established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.   *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . .

an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

### 3. Analysis

Johnson's Ground Two asserts an ineffective assistance of appellate counsel claim. He argues that, due to his condition at the time of the alleged waiver of his *Miranda* rights, his appellate counsel should have appealed on the ground that it was error to conclude that he had knowingly and intelligently waived his rights to counsel and to remain silent. Appellate counsel argued only that Johnson's waiver was involuntary due to the facts that he had just

16

been released from the hospital and had been given pain medication to treat his superficial gunshot wound.  ECF Doc. 7-1 at 33-36.

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 392 (1985).  In *Strickland v. Washington*, the U.S. Supreme Court established that a petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the *Sixth Amendment*; and (2) counsel's deficient performance prejudiced the defendant. 466 U.S. 668, 688 (1984).  This standard applies to claims that appellate counsel was constitutionally ineffective.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  To act as counsel guaranteed by the *Sixth Amendment*, appellate counsel need only exercise reasonable professional judgment, and is not obligated to raise every "colorable" claim on appeal.  *Jones*, 463 U.S. at 754; *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").  Further, counsel cannot be ineffective for failing to raise a meritless claim.  *Shaneberger*, 615 F.3d at 452; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (indicating that the task of winnowing out less persuasive arguments on appeal is the hallmark of an effective appellate advocate).  For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Johnson argues that his appellate counsel should have raised the issue of whether Johnson knowingly and intelligently waived his *Miranda* rights.  This issue is related to the issue appellate counsel *did* raise – whether his statement to police was voluntary.  But as

17

pointed out by the Ohio Court of Appeals, it was not the precise issue raised by appellate counsel.  However, the issues involve some of the same facts.  In considering whether Johnson's statement to police was voluntary, the Ohio Court of Appeals stated:

{¶ 12} In his first assignment of error, Johnson contends that his statement to Sergeant Korsog was not voluntary.  He argues that Sergeant Korsog knew that Johnson was under the influence of pain medication and alcohol at the time of the interview, so attempting to interview him was inherently coercive.  The state counters that competent, credible evidence supports the trial court's finding that Johnson's alleged intoxication and earlier use of pain medication did not render his statement involuntary.

{¶ 13} Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.  The trial court acts as the trier of fact at a suppression hearing.  The trial court weighs the evidence and determines the credibility of the witnesses.  Although we must accept any findings of fact that are supported by competent, credible evidence, we conduct a de novo review to determine whether the facts satisfy the applicable legal standard, and this independent review is done without deference to the trial court.  *State v. Codeluppi*, 139 Ohio St.3d 165, 2014–Ohio–1574, 10 N.E.3d 691, ¶ 7, citing *Burnside* at ¶ 8; *State v. Jones–Bateman*, 6th Dist. Wood Nos. WD–11–074 and WD–11–075, 2013–Ohio–4739, ¶ 9.

{¶ 14} We note that Johnson argues only that his statement to the police was involuntary; he does not argue that his waiver of his *Miranda* rights was made involuntarily, unknowingly, and unintelligently.  Although related, these are distinct issues.  *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996); *State v. Underdown*, 10th Dist. Franklin No. 06AP–676, 2007–Ohio–1814, ¶ 16.  Thus, even though Johnson does not dispute that he waived his *Miranda* rights before speaking with police, we must nonetheless consider whether his subsequent statements were given voluntarily.

{¶ 15} In determining whether a statement is voluntary, the court considers whether the statement is the result of police coercion or overreaching and, if so, whether the totality of the circumstances surrounding the statement indicates that it was involuntary.  Evidence of police coercion or overreaching—for example, physical abuse, threats, or deprivation of food, medical treatment, or sleep—is a prerequisite to a defendant's statements being considered involuntary.  *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).  Such evidence triggers a totality of the circumstances analysis.  *Id.*; *Eley* at 178; *State v. Downard*, 6th Dist. Wood No. WD–05–086, 2007–Ohio–2144, ¶ 22, citing *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). That is, if there is no evidence of police coercion, the court need not

assess the totality of the circumstances. *State v. Belton*, 149 Ohio St.3d 165, 2016–Ohio–1581, 74 N.E.3d 319, ¶ 107, citing *State v. Wesson*, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶ 35.

{¶ 16} A review of the record in this case shows that Johnson was not subject to coercion or overreaching by Sergeant Korsog or any other TPD officer. Johnson makes no allegations of physical abuse or threats.  Nor does the record support a finding that Johnson was deprived of food, sleep, or medical treatment.  In fact, the record shows that the officers offered and provided food to Johnson; the officers provided Johnson with water when he requested it; the interview happened in the middle of the afternoon; Johnson never mentioned being tired or acted tired while the officers were in the room; Sergeant Korsog spoke to Johnson only after Johnson was discharged from the hospital; the interview happened more than 12 hours after Johnson received a superficial gunshot wound; Johnson did not tell the officers that he was intoxicated or had taken any medication that could affect his thinking; Johnson did not say that he was in pain; and Johnson did not act as though he was experiencing pain.  The trial court did not make a finding that no coercion occurred because the motion to suppress argued that Johnson did not knowingly, voluntarily, and intelligently waive his *Miranda* rights (not that his confession was involuntary), which does not require a showing of coercion. *See Underdown*, 10th Dist. Franklin No. 06AP–676, 2007–Ohio–1814, at ¶ 16. Regardless, there is significant competent, credible evidence in the record to support a finding that there was no police coercion.

{¶ 17} Johnson argues that the interview was inherently coercive because it happened an hour after he was released from the hospital and a half a day after he received a gunshot wound. He claims to have been in pain and under the influence of alcohol and pain medication. While these facts are relevant to the totality of the circumstances, we found no authority supporting the contention that the mere existence of these factors, alone, rises to the level of coercion or overreaching.

{¶ 18} Sergeant Korsog's testimony at the hearing and the video of the interview do not support a finding that the police used Johnson's alleged weaknesses to get him to talk to them.  Rather, Sergeant Korsog testified that he took into account everything he knew about Johnson and the situation, including that Johnson smelled of alcohol at the time of the murder (13 hours before the interview); that Johnson had been shot earlier that day; and that medical professionals had determined that Johnson no longer required inpatient medical care. Sergeant Korsog also testified that he evaluated Johnson's appearance and demeanor before and during the interview and determined that Johnson was capable of providing a voluntary statement.  Sergeant Korsog noted that Johnson did not smell of alcohol, did not slur his speech, did not mention any alcohol or pain medicine use, and appeared alert and lucid.

19

{¶ 19} We therefore find that Johnson's statement was voluntary because it was not a result of coercion or overreaching and the trial court properly denied the motion to suppress. Accordingly, Johnson's first assignment of error is not well-taken.

*State v. Johnson,* 6th Dist. No. CL 16-1165, 2017-Ohio-8206.

The Ohio trial court made the following findings of fact after the suppression hearing:

{¶ 3}   The defendant was interviewed that afternoon around 3:10 p.m. or 1510 military time by Sgt. Korsog of the Toledo Police Department.  He was given his Miranda Rights by Sgt. Korsog.  The defendant responded orally and by nodding that he understood his rights.  At no time int eh approximate one (1) hour interview di the defendant exercise any of his Miranda Rights.

{¶ 4}   During the initial conversation, the defendant was aware of the incident they were discussing and was responsive to the questions asked and was asking relative questions in return.  There was some testimony as to his blood alcohol level at the hospital after the incident but his interview was some 10-11 hours later and there were no signs that the alcohol or medication interfered with his ability to waive his rights.

The trial court then concluded:

{¶ 7}   In considering the statement of the defendant, he was given his Miranda Rights and he waived them.  Neither his blood alcohol nor any pain medication interfered with his ability to waive those rights.  His interaction with Sgt. Korsog was appropriate and his answers to questions was quite responsive.  He even asked relative questions to the officer.  The Court finds that the defendant made a knowingly, intelligent and voluntary waiver of his "Miranda Rights" and any statements made by the defendant are admissible at trial.  The Motion to Suppress must be denied.

ECF Doc. 7-1 at 12-13.  These state court factual findings are presumed correct unless

Johnson rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Moore v.*

*Mitchell,* 708 F.3d 760 (6th Cir. 2013).

Even though the Ohio Court of Appeals did not directly review whether Johnson

knowingly and intelligently waived his *Miranda* rights, there is no reason to believe that it

would have overturned the trial court's findings of fact.  After all, the Ohio Court of Appeals

noted that the trial court was responsible for making findings of fact, and the Ohio Court of

Appeals considered the "totality of the circumstances" including, for example, "the deprivation of food, medical treatment, or sleep."  The court of appeals also relied on Sergeant Korsog's testimony that "Johnson did not smell of alcohol, did not slur his speech, did not mention any alcohol or pain medicine use, and appeared alert and lucid."  And after fully considering the totality of the circumstances, the court of appeals found that Johnson's statement to police was voluntarily made.  Because the trial court was responsible for weighing the evidence and making findings facts at the suppression hearing, the Ohio Court of Appeals most likely would have affirmed the trial court's conclusion that Johnson knowingly and intelligently waived his *Miranda* rights.

To prevail on his ineffective assistance of appellate counsel claim, Johnson would be required to show that counsel's representation "fell below an objective standard of reasonableness," and that counsel's deficient performance prejudiced the defendant. *Strickland,* 466 U.S. 668, 688 (1984).  He could not do so here.  There is every indication that the Ohio Court of Appeals would have affirmed the trial court's decision that Johnson knowingly and intelligently waived his *Miranda* rights. Therefore, it could not be said that it was unreasonable for appellate counsel to omit this issue from Johnson's appeal.  And it certainly could not be said that failing to assign that error prejudiced Johnson.

Johnson has not cited any case law holding that pain medication or alcohol would have rendered his waiver of Miranda rights unknowing or unintelligent.  Conversely, Warden Sheldon has cited case law holding just the opposite.  ECF Doc. 7 at 32.  In *Treesh v. Bagley,* 612 F.3d 424, 434 (6th Cir. 2010), the Sixth Circuit recognized that "the Supreme Court has never said that impairment from drugs, alcohol, or other similar substances can negatively impact 'a suspect's waiver of his *Miranda* rights."  In *U.S. v. Miller,* 562 F. App'x. 272, 290

(6th Cir. 2014), the court held that a waiver was voluntary even when the defendant was under the influence of "an intoxicating medication" or had been "drinking heavily." These holdings make sense. Otherwise, a suspect who exhibited no impairment and appeared sober and intelligent could later claim that the waiver of his or her rights was unknowingly made due to intoxication. Such a holding would require every suspect to receive drug and alcohol screenings prior to being questioned, even if he or she appeared sober and possessed time-sensitive information. The result would be unworkable.

The Ohio courts found that Johnson "did not smell of alcohol, did not slur his speech, did not mention any alcohol or pain medicine use, and appeared alert and lucid" during his interrogation. The Ohio courts also found that Johnson's statement was not a result of coercion or overreaching by police. There is no reason to question these findings or the logical decisions that flowed from them. It certainly cannot be said that the state courts' decisions were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."

Johnson's Ground Two claim asserts that he received ineffective assistance of counsel because appellate counsel did not argue that he unknowingly or unintelligently waived his *Miranda* rights. However, this issue lacked merit, and appellate counsel was not required to raise a meritless claim. *See Rupert v. Berghuis,* 619 F. Supp.2d 363, 371 (6th Cir. 2008); *Caver v. Straub,* 349 F.3d 340, 348 (6th Cir. 2003); *Jones v. Barnes,* 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983). Consequently, Johnson has failed to show that he received ineffective assistance of appellant counsel in violation of his 6th Amendment rights. He has also failed to show that he suffered any prejudice as a result of counsel's failure to raise this issue on appeal. And he has not shown that the trial court's decision to overrule his

22

motion to suppress for lack of a valid *Miranda* waiver was contrary to or an unreasonable application of clearly established federal law or was the result of an unreasonable determination of the facts on the record before the court.  Should the Court decide to consider Johnson's Ground Two claim on the merits, I recommend it be dismissed for lack of merit.

## VI.    Recommendation Regarding Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

When a petition is to be dismissed in whole or part on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the

23

district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts my recommendations, Johnson will not be able to show that the Court's rulings on his Ground Two claim are debatable among jurists of reason.  And Johnson withdrew his Ground One claim.  Johnson has not shown any unreasonable applications of clearly established federal law or any unreasonable determinations of facts.  Habeas relief is not available for the issues identified in Johnson's petition.  This would not be debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VII. Recommendations

Because Johnson withdrew his Ground One claim and his Ground Two claim was procedurally defaulted and lacks merit, I recommend each of his claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Johnson not be granted a certificate of appealability.

Dated: July 28, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).